565 So.2d 820 (1990)
John D. GENTILE, Appellant,
v.
Joan P. GENTILE, Appellee.
Nos. 89-1410, 89-1466.
District Court of Appeal of Florida, Fourth District.
August 1, 1990.
Rehearing Denied August 23, 1990.
*821 A. Matthew Miller of Miller, Schwartz & Miller, P.A., Hollywood, for appellant.
Nancy Little Hoffman of Nancy Little Hoffman, P.A., and Bruce G. Shaffner, P.A., Fort Lauderdale, for appellee.
WARNER, Judge.
This is an appeal from a final judgment of dissolution awarding to the wife permanent alimony and child support, and distributing marital property. The appellant husband contends that the cumulative effect of the awards was an abuse of discretion. We agree and reverse.
In its final judgment, the trial court awarded $1,200 per month child support for the parties' three children, day care expense of $50 per week and $550 per month in permanent alimony. It also required that the husband pay a second mortgage on the marital residence as alimony, which amounted to $1,100 per month, and required the husband to keep up medical, dental and life insurance for the children in addition to being responsible for expenses not covered by insurance (the wife's affidavit estimates this at $70 per month).
With respect to the property division, the wife was awarded the husband's interest in the marital home; the furniture in the home; a tax refund of $5,300; a 1987 automobile; one-half of the joint stocks; and her own IRA account. The husband was allowed to keep his 401K thrift plan (26 U.S.C.A. § 401(k) (1988)); pension plan; one-half of the jointly held stock; and was also credited with a part time accounting business which the parties had operated at a loss. (He had given the business to his sister.) Taking into consideration the liabilities associated with these distributions, the wife received 57% of these marital assets or about $155,000 to the husband's 43% or $117,000. The husband was also allowed to keep a lot owned prior to the marriage, however, he was required to pay the wife's attorney's fees as well as his own litigation expenses, the total of which exceeded the value of the lot.
In addition, the parties owned five commercial properties which they agreed to sell. Out of the sale proceeds marital debts were required to be satisfied. However, other debts were left as the husband's sole responsibility. Until sale of the properties, the husband was required by the final judgment to keep all liabilities on the properties current. At the time of the final judgment these liabilities were approximately $1,800 per month for four of the properties, and there was an anticipated $1,600 per month loss on the fifth property because the current lease was to expire two months after the entry of the final judgment. Two properties were under contract for sale at the time of the final judgment, but there were no offers as yet on the other properties.
The husband's gross pay at the time of the final hearing was approximately $73,000. The wife conceded at oral argument that after deducting only taxes, social security, child support, alimony, insurance payments to the husband's company, and mandatory loan repayments, one of which was for the second mortgage on the marital residence (now designated as alimony in the final judgment), the husband is left with only about $10,000. From that, he is required by the final judgment to pay day care expenses; one-half of the medical and dental expenses not covered by insurance; keep current all liabilities on unsold commercial properties; and pay other debts. Besides the foregoing, he must somehow find some money to live on. The wife, on *822 the other hand and according to her financial affidavit, will have all of her expenses met by this award and her income from her current employment, including allocations for monthly pool service; all of her clothing, cosmetics and beauty needs; an allocation for the purchase of gifts; contributions to charity; and allocations for entertainment and vacations. The husband obviously can ill afford any such luxuries for himself.
Although each award of alimony and child support, standing alone, may not be objectionable, it is the cumulative effect of these awards which makes the trial court's judgment an abuse of discretion. As was noted in the similar case of Blum v. Blum, 382 So.2d 52 (Fla. 3d DCA 1980), compliance with the final judgment will leave appellant destitute and unable to provide even the most basic living expenses. This court has stated that an award to a wife should permit her to retain some semblance of her former life style "while at the same time ensuring that the husband is not strapped so that his incentive to strive forward and his lust for life are seriously impaired." McAllister v. McAllister, 345 So.2d 352, 355 (Fla. 4th DCA 1977), cert. denied, (Fla. 1978); accord Parham v. Parham, 385 So.2d 107 (Fla. 3d DCA 1980). While some may dispute the financial level at which a spouse loses his "lust for life" and incentive to strive forward, we do not think that anyone would seriously disagree that being left with less than $10,000 to live on out of a $73,000 salary would certainly stifle any incentive the husband here might have for getting up every morning to go to work.
We are mindful of the abuse of discretion standard of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). However, where the husband's income is nearly exhausted on obligations imposed by the final judgment, leaving him with practically no money to support himself, reasonable persons could not differ as to the impropriety of the actions taken by the trial court. Traditional alimony, it must be remembered, depends upon the "financial ability of the other spouse to make such payment without substantially endangering his or her own economic status." Id. at 1201 (emphasis supplied). Here, the husband's economic status is not only endangered, it is destroyed. Seventy-nine percent of the husband's net pay is taken for alimony and support obligations not including additional medical and dental payments and obligations on the parties' jointly owned commercial properties. Appellate courts have not hesitated to find an abuse of discretion in similar awards. Blum v. Blum; Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983) (awards totalling 71% of husband's take home pay an abuse of discretion); Kaylor v. Kaylor, 413 So.2d 870 (Fla. 2d DCA 1982) (awards of in excess of 70% of husband's take home pay an abuse of discretion); Nicholson v. Nicholson, 372 So.2d 178 (Fla. 2d DCA 1979) (award of 86% of current take home pay an abuse of discretion).
In response, the wife points to the husband's remaining capital assets and notes that Canakaris also permits the trial court to consider their value in assessing the husband's ability to pay. Canakaris, 382 So.2d at 1202. The main asset available to the husband upon which to draw to satisfy support obligations is his 401K thrift plan held with his employer. However, the money from this plan is not available to the husband without incurring a 40% tax and penalty on withdrawal. Such a consequence should have been considered by the trial court but was not. Calamore v. Calamore, 555 So.2d 1302 (Fla. 4th DCA 1990). Secondly, the thrift plan was part of the trial court's equitable distribution of marital assets. The husband was allowed to keep his entire plan and pension. In return, the wife was awarded the husband's interest in the house. The distribution resulted in the wife receiving a slightly greater share of the assets than the husband. To now compel him to exhaust his assets to meet support obligations makes an equitable distribution inequitable. Cf. Benekos v. Benekos, 557 So.2d 942 (Fla. 2d DCA 1990). Finally, in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), the supreme court held that a pension or similar plan (such as the husband's thrift plan) *823 may be considered as a source of marital property subject to equitable distribution or as a source of payment of alimony but not as both. In the instant case, the wife's argument that the husband's equitable distribution of the thrift plan can now be looked to as a source of alimony must fail for that reason alone.
The trial court justified the inequitable result in this case by stating:
In formulating this equitable distribution wherein the court is faced with the task of providing for the welfare of both parties and the children, the court has determined that the difficult economic circumstances claimed by the Husband are due primarily to his imprudent investment practices and he should bear the greater responsibility to rectify the results of his ill-advised actions.
What the court was referring to is the losses the husband suffered on speculative stock investments which lost their value in the stock market crash of 1987 as well as the fact that the commercial properties had become a substantial drain on the resources of the parties. The wife testified at trial that she had concurred in all of the various purchases and trusted her husband's business judgment. All of the investments were joint. At trial as well as on appeal the wife argued that the holding of Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979), permitted the trial court to visit upon the husband all of the burden of economic hardship because he had been in charge of the family finances and had not managed them well. We disagree. Williamson involved an adulterous affair upon which the husband wasted marital assets. The supreme court stated that it is proper to base an alimony award "partially on a finding that one spouse is more responsible than the other for the difficult economic circumstances facing both parties." Id. at 1017. This statement, however, was made in the context of marital misconduct which resulted in dissipation of the marital assets. Dissipation has been defined in domestic cases as applying to a situation:
where one spouse uses marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.
Hellwig v. Hellwig, 100 Ill. App.3d 452, 55 Ill.Dec. 762, 426 N.E.2d 1087, 1094 (1981). Other decisions have held that imprudent investment practices do not constitute dissipation of marital assets. See In re Marriage of Drummond, 156 Ill. App.3d 672, 109 Ill.Dec. 46, 509 N.E.2d 707 (1987); Wassif v. Wassif, 77 Md. App. 750, 551 A.2d 935 (1989); cert. denied, 315 Md. 692, 556 A.2d 674 (1989).
In Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988), this court stated:
those entering into a marriage partnership must share not only the benefits and successes of the relationship, but also the risk of failure and the economic consequences to the parties of such failure.
Id. at 1018. To allow the parties to litigate whether one spouse invested the parties' money contrary to a "prudent man" standard entitling the other spouse to a greater share of the marital pie and economic devastation for the other spouse raises the consideration of "marital misconduct" to new and uncharted levels of fault finding. The next step of course would be to insist on a financial accounting of all of the marital years to determine which spouse was the more prudent investor and spender. We do not choose to start down such a path with this case.
The trial court was faced with a difficult task in this case where the income was not sufficient to satisfy the needs of two households. As was said by the Fifth District in Marsh v. Marsh, 553 So.2d 366 (Fla. 5th DCA 1989):
The problem may be the common one that, before dissolution of the marriage, by incurring debt, the family lived beyond its economic means and that, after the marriage is dissolved, to live separately and to maintain two households, will cost even more. A trial court cannot really solve this common and frustrating aspect of domestic relations work (footnote omitted) but neither can the trial court order an obligor to pay more than *824 the court has found that obligor has the ability to pay.
Id. at 367-368.
While we specifically find error in the support awards, we reverse all awards so that upon remand the trial court can refashion a distribution scheme using both marital property and income to provide for the welfare of all parties.
LETTS, J., concurring specially with opinion.
WALDEN, J., dissents without opinion.
LETTS, Judge, concurring specially.
I must join in Judge Warner's well reasoned opinion, not however, without some misgiving. For example, I am suspicious about the "gift" of the husband's CPA practice to his sister and would have been in favor of affirmance had the trial judge in any way based his conclusion on imputed income or assets. It seems clear, however, that the trial court based its ruling, especially as to the distribution, solely on the husband's imprudent investing and I am firmly in agreement with Judge Warner as to that. There is no evidence that the husband deliberately entered into making worthless investments in order to destroy the marital pie. Apparently, the husband was only guilty of not making good investments.