943 So.2d 232 (2006)
Renato Bruno SQUINDO, Appellant,
v.
Olga J. OSUNA-SQUINDO, Appellee.
No. 3D05-1616.
District Court of Appeal of Florida, Third District.
November 8, 2006.
Rehearing Denied December 20, 2006.
Paul Morris; Linda C. Singer, Miami, for appellant.
*233 Perez-Abreu & Martin-Lavielle, P.A., and Andy W. Acosta, and Ana Martin-Lavielle, Coral Gables, for appellee.
Before GREEN, RAMIREZ, and SUAREZ, JJ.
GREEN, J.
The former husband appeals a final dissolution judgment that awarded to the former wife permanent periodic alimony and a lump sum alimony award. On cross-appeal, the former wife appeals the trial court's failure to award her retroactive alimony. We reverse the permanent alimony and lump sum alimony awards on the main appeal; the issue on the cross-appeal is thereby rendered moot.
The parties, who both hold the equivalent of high school degrees, were married in 1978. They lived in Switzerland until 1995 where the former husband was employed by his family's music business. He earned approximately $120,000 per year. The former wife did not work outside of the home throughout the course of this marriage, which exceeded twenty five years.[1] Two children were born of this marriage, but both had reached the age of majority and were no longer living at home at the commencement of this dissolution proceeding.
Although the parties enjoyed a lavish lifestyle in Switzerland while the former husband was employed by his family's business, they made a joint decision to relocate to Florida in 1995. At the time, the former husband had no employment awaiting him in Florida. The parties sold their home in Switzerland in 1995 for $1.4 million and purchased a home in Pinecrest, Florida, that same year for $330,000. Their minor children were enrolled in and attended expensive private schools through their high school graduations.
Upon arriving in Miami and despite his best efforts and previous work history, the former husband was unable to secure employment comparable to that which he had in Switzerland. He eventually secured a commission-based position, but it did not yield earnings sufficient to support the family. He then started his own business, which proved unprofitable. Meanwhile, the parties continued to enjoy an affluent lifestyle and live off of their assets brought from Switzerland. Eventually, these assets were depleted and the marriage ran into trouble.
The parties separated in 2003 and the former husband filed a petition for dissolution of the marriage. They sold their only significant asset, the Pinecrest marital home, at a profit of $448,000.[2] By agreement, the parties each initially received $113,500 from these proceeds. The remainder was held in trust. Upon resolution of the dissolution action, these remaining funds were also to be distributed equally.
When the parties separated, the former husband moved to an apartment in Gainesville, Florida, to be near the parties' college-aged son. The former husband secured employment with the University of Florida at an annual salary of $33,000. According to his financial affidavit, he has a net monthly income of $1,941 and a monthly deficit of $3,340.
The former wife, on the other hand, purchased a new condominium in Miami, for $255,500. She is unemployed. Her financial affidavit shows a monthly deficit of $5,581.
*234 At the conclusion of the dissolution trial, the trial court entered a final judgment that approved the parties' agreement as to the distribution of their assets. In addition, the court awarded the former wife permanent periodic alimony in the amount of $1,333 per month. In finding that the former husband has the ability to pay the amount the trial court observed, among other things, that the former husband comes from a wealthy Swiss family and has the ability to seek his family's assistance; the former husband may be entitled to a future inheritance that might form the basis for a future increase in alimony; and the alimony amount awarded would provide each party with the same net income.
The final judgment also awarded the former wife $15,000 in lump sum alimony for what the court found to be the former husband's dissipation of marital assets. This finding was based on evidence at trial that, for several years during the course of the marriage, the former husband and the parties' son had restored a 1966 Ford Mustang as a father/son project. The cost of this restoration project was found to be approximately $30,000 by the trial court.
The former husband takes this appeal and argues that the trial court abused its discretion in awarding permanent periodic alimony, which he has no ability to pay. He further argues that the trial court reversibly erred in awarding lump sum alimony to the former wife based upon its conclusion that he had dissipated marital assets when he expended $30,000 for the car restoration project. The former wife cross-appeals the trial court's failure to award her permanent alimony retroactively from the date of former husband's new employment.
As to the first issue on the main appeal, we agree with the former husband that the record evidence does not support the trial court's conclusion that he has the present ability to pay the permanent periodic alimony amount. Permanent periodic alimony is awarded "to provide for the needs and the necessities of life to a former spouse . . . [based on] the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds." Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980). Here, the record fully establishes the former wife's need for support. The record evidence, however, also affirmatively establishes the former husband's inability to pay. Even without consideration of his monthly deficit, this award is excessive as it will consume approximately 70% of the former husband's net monthly income. In such instances, the appellate courts in this state have found such awards to be excessive and an abuse of discretion. See Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990) (reversing permanent alimony and child support awards which consumed 79% of husband's net pay); Blum v. Blum, 382 So.2d 52 (Fla. 3d DCA 1980) (award requiring husband to pay over $4000 per month excessive where compliance would leave him with about $200 per month to live on without discharging any of his other responsibilities and duties); Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983) (awards which amounted to 71% of husband's take home pay an abuse of discretion); Kaylor v. Kaylor, 413 So.2d 870 (Fla. 2d DCA 1982) (awards in excess of 70% of husband's take home pay an abuse of discretion); Nicholson v. Nicholson, 372 So.2d 178 (Fla. 2d DCA 1979) (award of 86% of current take home pay an abuse of discretion). After payment of the alimony award, the former husband would have $608 per month for his sustenance.
Although the final judgment of dissolution did not explicitly impute income to the former husband, it did contain the *235 following suggestive findings that he is underemployed:
The Husband failed to make a good faith effort to earn a living after relocating to Miami and choose [sic] to be self-employed in a field that he had no experience rather than work a job that was beneath him. In fact, the Husband failed to seek and obtain employment until September 2004, when he was hired by the University of Florida at a low salary. The Husband previously had earned in excess of $100,000 per year more than 10 years prior when he was employed in Switzerland, yet claims the only employment he could not obtain would only pay $33,000. Additionally, even though the Husband is able to speak fluently five different languages, he limited his job search to the Gainesville, Florida area which has a lower standard of living, lower pay scale, and limited employment opportunities.
Contrary to the lower court's findings, we do not believe that the record supports a conclusion that the former husband is currently underemployed.[3] The former husband has the equivalent of only a high school education. It is generally unrealistic to expect a high school graduate to command a six figure salary in the American job market. The former husband's ability to do so in Switzerland was probably more attributable to the fact that he was employed by his family's business.
Moreover, the fact that the former husband has the ability to request financial assistance from his wealthy Swiss family is an irrelevant justification for this alimony award. See Thilem v. Thilem, 662 So.2d 1314 (Fla. 3d DCA 1995) (sporadic family loans deemed not reliable income for determination of alimony award); Shiveley v. Shiveley, 635 So.2d 1021, 1022 (Fla. 1st DCA 1994) ("Gifts which have not yet been received are purely speculative in nature, mere expectancies, and as such are not properly included in the calculation of income for purposes of determining the need for, or the ability to provide, support."); see also Bedell v. Bedell, 583 So.2d 1005, 1005 (Fla.1991) ("For the purpose of demonstrating need in dissolution or modification proceedings, the fact that one of the parties is surviving through the largess of her family is legally irrelevant."). The fact that the former husband may receive a future inheritance from his family is also an irrelevant consideration for his ability to pay alimony to the former wife. See McCloskey v. McCloskey, 359 So.2d 494, 496 (Fla. 4th DCA 1978) (error for trial court to include possible future inheritance when calculating wife's net worth); Traylor v. Traylor, 214 So.2d 15 (Fla. 1st DCA 1968) (husband's potential interest in father's living trust is to remote and speculative to be considered as income for calculating support award).
We find that the permanent periodic alimony award in this case, which is over two-thirds of the former husband's income, is excessive and erroneous. See Vega v. Vega, 877 So.2d 882 (Fla. 3d DCA 2004), and cases cited therein. Accordingly, we hold that it was an abuse of discretion to award alimony in an amount that exceeded the former husband's current ability to pay. See Canakaris; Narcis v. Narcis, 707 So.2d 936 (Fla. 3d DCA 1998); Marsh v. Marsh, 553 So.2d 366 (Fla. 5th DCA 1989).
We next address the court's lump sum alimony award. We also agree with the former husband that this award cannot *236 be justified by a "dissipation" of marital assets. The evidence at trial reveals that during the course of the marriage, the former husband purchased a 1966 Ford Mustang for $2,800 to restore it with the parties' son. Upon completion of this project, the former husband intended to present the car to his son as a gift.
The trial court found that the former husband spent approximately $30,000 of marital assets toward this restoration project over the course of several years. The trial court also found that when the parties were having serious financial problems, despite the expenditure, the vehicle still was not in driving condition. As a result, the court essentially concluded that the former husband dissipated $30,000 in marital assets and as a result the former wife was entitled to receive $15,000 as a lump sum alimony award.
We do not agree with the characterization of these expenditures as a dissipation of marital assets. Indeed, we view them more in the nature of an unwise expenditure. That is, although the former husband could (and should) have expended these marital funds more wisely, given his family's other financial needs, these funds were nevertheless expended on an endeavor within the ambit of the family.
The dissipation of marital assets has thus far been confined to a situation "where one spouse uses marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." See Gentile, 565 So.2d at 823 (quoting Hellwig v. Hellwig, 100 Ill.App.3d 452, 55 Ill.Dec. 762, 426 N.E.2d 1087, 1094 (1981)). It has not been extended to imprudent investment practices by a spouse for the family's benefit. Gentile. As the Fourth District very aptly put it in Gentile:
To allow the parties to litigate whether one spouse invested the parties' money contrary to a "prudent man" standard entitling the other spouse to a greater share of the marital pie and economic devastation for the other spouse raises the consideration of "marital misconduct" to new and uncharted levels of fault finding. The next step of course would be to insist on a financial accounting of all of the marital years to determine which spouse was the more prudent investor and spender. We do not choose to start down such a path with this case.
Id. at 823. We likewise decline to extend the concept of dissipation of marital assets to include imprudent or unwise investment decisions made for the benefit of the family. Here the former husband's expenditures of the marital funds were made for the benefit of the parties' son. As such, we conclude as a matter of law, that these expenditures did not constitute a dissipation of the marital assets. The lump sum alimony award therefore must be reversed.
Given our reversal of the permanent periodic alimony award, we find it unnecessary to address the issue raised by the former wife on the cross-appeal.
In conclusion, we recognize that this was a difficult case and that the trial court may have been understandably moved by the dire financial circumstances of these parties, particularly those of the former wife. This was a case where two parties with limited educational backgrounds made the joint decision during their marriage to live far above their economic means on fixed assets that have now been depleted. It will now unfortunately cost them more to live separately and to maintain two households. "A trial court cannot really solve this common and frustrating aspect of domestic relations work but neither can the trial court order an obligor to pay more *237 than the court has found that obligor has the ability to pay." Marsh v. Marsh, 553 So.2d 366, 367-68 (Fla. 5th DCA 1989). Although we reverse the periodic alimony award and lump sum alimony award, we remand for the trial court's consideration of a nominal alimony amount to the former wife and/or reservation of jurisdiction to entertain a modification motion in the future should there be a significant change in circumstances. In all other respects, we affirm the final dissolution judgment.
Reversed and remanded in part with directions and affirmed in part.
NOTES
[1] Prior to the marriage, the former wife had been employed as a medical transcriber and as a secretary for an airline.
[2] There were no marital liabilities.
[3] Indeed, the former wife presented no evidence to meet her burden of establishing that the former husband was underemployed. See Andrews v. Andrews, 867 So.2d 476 (Fla. 5th DCA 2004).