ROWE, J.
The former husband appeals the trial court’s amended order granting his petition to reduce alimony payments to his former wife and directing him to pay a portion of the former wife’s attorney’s fees. Of the multiple issues raised by the former husband, we reverse on two. First, the trial court erred by modifying the permanent periodic alimony obligation to an amount which exceeded the former husband’s ability to pay. Second, the trial court erred in requiring the former husband to pay a portion of the former wife’s attorney’s fees.

FACTS AND PROCEDURAL HISTORY

The parties were divorced in 2005, and in the final judgment dissolving the marriage, the former husband was ordered to pay the former wife $5,000 per month in permanent alimony. At the time, the former husband was employed by a private label chemical company he had been with for 25 years, earning $175,000 a year. In April 2009, however, the 56-year-old former husband was informed that his contract would not be renewed and that he would receive one year’s salary in severance pay. The former husband ultimately found a job earning $66,000 annually.
On July 12, 2010, the former husband filed a petition to modify the final judgment of dissolution, requesting the court to reduce his monthly $5,000 permanent alimony obligation. In support of his petition, the former husband filed a financial affidavit, averring that he had a present monthly net income of $3,825 and present monthly expenses of $4,377. In response, the former wife submitted a financial affidavit, averring that she had a present monthly net income of $6,066 (including the $5,000 monthly alimony payment awarded under the 2005 judgment) and total monthly expenses of $6,501, resulting in a monthly deficit of $435.
On September 27, 2010, the trial court conducted a hearing on the former husband’s petition for modification. At the hearing, the former husband testified in regard to his assets and liabilities that his estimated monthly health insurance cost of $600 was a significant issue for him since he had a number of heart problems and *810 procedures in the past, requiring approximately $250 per month in medication expenses not covered by insurance; that he had a first and second mortgage on his primary residence, a townhome, which he valued at approximately $98,000 as that was what a neighboring townhome had recently sold for; and that he paid $175 in quarterly homeowner’s association fees and $1200 annually for homeowner’s insurance. With regard to other assets, the former husband testified that he owned a 2005 Avalon purchased in February 2009, before he knew he was losing his job in April; a Ford Expedition and a motorcycle that he owned before the divorce; and a 2005 Triumph boat. In addition, the former husband testified that he had a 401(k) valued at $34,915, consisting of funds he and his employer contributed to his company’s 401(k) after the divorce; an IRA valued at $158,000, which he and the former wife split during the divorce; and another 401(k) that he and the former wife split, which is now with his new employer.
With regard to his ability to continue to meet his alimony obligations following the termination of his employment in 2009, the former husband testified that he paid alimony in August and September by taking money from his savings reserve and by borrowing money, and that at his current salary, which amounts to $5500 gross income per month, he is unable to continue to make $5000 monthly alimony payments.
The former wife testified that she is 57 years old, works 30 hours per week as a bookkeeper, and earns $1,033 per month. With regard to her assets, she testified that she bought a “high-rise” home with the money she received from the divorce, and she has an IRA with $245,000 in it, from which she has made withdrawals over a three-year period amounting to $123,000 to pay taxes, to purchase furniture for her condo, and to pay for the move. Regarding her expenses, the former wife testified that she has a $481 per month car payment for a car that she purchased after the divorce, and she needs alimony in order to pay the mortgage on her home. At the hearing she stated, “[Mjaybe I lived beyond what I should have.”
On October 4, 2010, the trial court issued an order granting the petition to modify the alimony obligation, reducing the former husband’s alimony payments from $5,000 per month to $3,500 per month and directing the former husband to pay $3,500 of the former wife’s attorney’s fees. The former husband filed a motion for rehearing, asserting that the trial court failed to give adequate consideration to the former husband’s ability to pay the $3,500 alimony awarded, which amounted to 81% of his net income. The former husband also contested the award of attorney’s fees, asserting that the former wife was in a better position to pay attorney’s fees.
The trial court issued an amended order granting the petition to modify the alimony award in which the trial court deleted a reference to the former husband’s IRA, and inserted a finding that the former husband has savings which he used to pay his August and September alimony payments and has borrowed some money since he lost his job. The court also added findings regarding the former husband’s activities after his severance and how he presumably funded those activities:
He additionally testified that he was aware his job would be terminated in April 2009 and he received his severance pay through July 29, 2010. He therefore had sixteen (16) months to anticipate the substantial loss of income. During this time he continued to receive his regular salary.... He could have easily planned ahead knowing that he might be out of work for a period of time by setting aside monies to meet his *811 alimony obligation when his severance pay ended. Obviously he chose not to do so and while out of work had to use savings and other income he had to maintain his needs and could have also done so to [meet] his alimony obligations.
Further, the trial court addressed the former husband’s assertions that he lacked the ability to pay:
While the husband argues that his expenses exceed his income and that the support obligation i[s] an excessive amount, it does not take into consideration the other assets he has which he has used of his own admission to support himself that could also be used towards the obligation he has towards his former wife.

ANALYSIS

Permanent Periodic Alimony Award
We review the trial court’s order for abuse of discretion, recognizing that “[d]issolution proceedings present a trial judge with the difficult problem of apportioning assets acquired by the parties and providing necessary support.” Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980). Under the facts of this case, we conclude that the trial court abused its discretion.
When awarding permanent periodic alimony, the trial court is obligated under section 61.08(2), Florida Statutes, to consider both the payee spouse’s need and the payor spouse’s ability to pay. See Pirino v. Pirino, 549 So.2d 219, 220 (Fla. 5th DCA 1989); accord Rabbath v. Farid, 4 So.3d 778, 785 (Fla. 1st DCA 2009). A trial court may not require a payor spouse to make alimony payments to a former spouse in an amount which does not allow for the payor to support himself. See Pirino, 549 So.2d at 220 (“Clearly the husband cannot be required to maintain the wife’s standard of living when this maintenance stretches beyond his financial capacity.”). It is well settled that a court abuses its discretion when it orders alimony payments in an amount that virtually exhausts the payor spouse’s income and leaves him with practically no money to support himself. See, e.g., Williams v. Williams, 10 So.3d 651, 652-53 (Fla. 5th DCA 2009) (finding abuse of discretion where child support and alimony payment was 97% of husband’s net income); Squindo v. Osuna-Squindo, 943 So.2d 232, 234 (Fla. 3d DCA 2006) (reversing payment equaling 70% of net income); Gentile v. Gentile, 565 So.2d 820, 822 (Fla. 4th DCA 1990) (finding abuse of discretion in award of 79% of husband’s income), disapproved on other grounds by Acker v. Acker, 904 So.2d 384 (Fla.2005). Here, the trial court’s order requires the former husband to pay 81% of his current net income to the former wife and to try to live on $831.02 a month when his own minimum financial need is $2,879 per month. Because the trial court’s modified alimony award effectively exhausts the former husband’s income, we conclude that the trial court abused its discretion. See Williams, 10 So.3d at 652-53. We, therefore, reverse the trial court’s alimony award and remand for further proceedings.
While under section 61.08(2), Florida Statutes, and well settled case law the trial court may consider net worth, past earnings, and the value of the parties’ capital assets, see Acker, 904 So.2d at 388, the trial court cannot require the former husband to incur indebtedness to pay alimony. See, e.g., Konsoulas v. Konsoulas, 904 So.2d 440, 444 (Fla. 4th DCA 2005) (“[T]he standard of living enjoyed by the parties to the marriage cannot necessarily be maintained where the parties lived beyond their means, and the former husband can no *812 longer financially support the standard of living.”); Sheiman v. Sheiman, 472 So.2d 521 (Fla. 4th DCA 1985) (reversing level of alimony where former husband did not have the present ability to pay the amount awarded). Further, -while the trial court may properly consider the former husband’s assets in determining his ability to pay, the court cannot require the former husband to deplete assets to make alimony payments. See Austin v. Fernandez, 898 So.2d 118, 119 (Fla. 3d DCA 2005) (reversing where depletion of assets was required for former husband to make alimony payments after involuntary loss of executive income). Here, the trial court found that the former husband had savings which he used to pay his August and September alimony payments and that the former husband had borrowed money since he lost his job. To the extent that the trial court’s alimony award is based upon a finding that the former husband had the ability to borrow funds or to deplete his assets to meet future alimony obligations, the trial court erred, especially in light of the relative financial positions of the parties. Further, while the trial court may consider assets awarded to the former husband during distribution for the purposes of determining alimony, see Acker, 904 So.2d at 388-89, requiring him to exhaust those assets to make alimony payments renders the modified alimony obligation inequitable. See Gentile, 565 So.2d at 822-23.
We are also compelled to briefly address the trial court’s finding that the former husband should have set aside funds to meet his future alimony obligations in the year following termination from his long-term employer. Notably, during this period the former husband was required to make $5,000 monthly alimony payments under the 2005 Judgment. The trial court’s finding that the former husband “could have easily planned ahead knowing that he might be out of work for a period of time by setting aside monies to meet his alimony obligation when his severance pay ended” has no legal foundation. We reject the suggestion by the trial court that a party who is meeting a current alimony obligation is required to set aside additional funds to meet future alimony obligations, in anticipation of a potential loss of income. Cf. Nelson v. Nelson, 651 So.2d 1252, 1254 (Fla. 1st DCA 1995) (“As a general rule, trial courts may not consider future or anticipated events in setting current alimony and child support amounts due to the lack of an evidentiary basis or the uncertainty surrounding such future events.”). The law requires nothing of the sort. Cf. Canakaris, 382 So.2d at 1201-02 (“The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.... Once instituted, permanent periodic alimony is subject to modification upon a substantial change of circumstances....”).
Attorney’s Fees Award
The former husband also asserts that the trial court erred in ordering him to pay $3,500 towards the former wife’s attorney’s fees because the record was clear that the former wife was in a superi- or financial position and could pay her own fees. We agree.
Section 61.16, Florida Statutes, allows for the trial court to order a party to pay a reasonable amount of attorney’s fees after considering the financial resources of both parties. This is “to ensure that both parties have similar ability to secure competent legal counsel.” Vitalis v. Vitalis, 799 So.2d 1127, 1132 (Fla. 5th DCA 2001). Where both parties to a dissolution are equally able to pay attorney’s fees, the *813 trial court abuses its discretion by requiring one spouse to pay the other’s attorney’s fees. Peak v. Peak, 411 So.2d 325, 328 (Fla. 5th DCA 1982). Here, the trial court’s order shows that the former husband’s salary is $5,500 per month, that the former wife’s net income is $1,033, and that the former wife will receive $3,500 per month in alimony. After the allocation of alimony from the former husband to the former wife, the former husband is in no better position to pay attorney’s fees than the former wife is. Where, as here, an equitable distribution of the marital property has been achieved and the trial court has equalized incomes through its alimony award, the trial court abuses its discretion in awarding attorney’s fees. Vitalis, 799 So.2d at 1133 (citing Naugle v. Naugle, 632 So.2d 1146 (Fla. 5th DCA 1994)); accord Gaudette v. Gaudette, 890 So.2d 1161, 1162 (Fla. 1st DCA 2004). For these reasons, we reverse the trial court’s award of attorney’s fees to the former wife.
REVERSED AND REMANDED.
HAWKES, J., concurs; BENTON, C.J., concurs in judgment.