598 So.2d 141 (1992)
Bennie Huff REY, Appellant,
v.
Jose REY, Jr., etc., Appellee.
No. 90-1102.
District Court of Appeal of Florida, Fifth District.
April 17, 1992.
*142 Glen E. Greenfelder, Greenfelder, Mander, Hanson & Murphy, Brooksville, for appellant.
Charlie Luckie, Jr., and Mary Pavloff Attridge, McGee, Luckie & Dayton, P.A., Brooksville, for appellee.

ON MOTION FOR REHEARING EN BANC
PETERSON, Judge.
The husband's Motion for Rehearing En Banc is granted. We withdraw our previous opinion and substitute the following for it.
The wife, Bennie Huff Rey, alleges that in dissolving her marriage to Jose Rey, Jr., the trial court abused its discretion in several respects. She contends that the court abused its discretion in failing to require the husband to provide health insurance for the wife and a minor child and in failing to require the husband to secure, with an existing life insurance policy, the future payments of $1,000 per month for child support, $1,000 per month for alimony, and $875 per month for ten years as part of the plan for equitable distribution. She contends that the court further abused its discretion in failing to require the husband to pay interest on the deferred payments of $875 per month, in failing to award adequate permanent periodic alimony and child support, and in failing to award attorney's fees to the wife. We agree only with the wife's contention that health insurance should have been required for the minor child, that the equalizing distribution should be secured, that alimony should be increased, and that her attorney's fees, at least in part, should be awarded.

BACKGROUND
The husband and the wife are fifty-four and fifty-three years of age, respectively. Four children were born during the parties' 28-year marriage. All of the children are adults except a son, age fourteen, who resides with the wife. However, the husband continues to contribute over $3,000 per month to the support of two adult sons and an unemployed daughter and her child who reside with him.
The husband's past income has varied with the success of the parties' operation of a drugstore. The husband is the store pharmacist, and the wife had participated as the store manager and bookkeeper. The husband's 1989 net income from the store was $144,000 before income taxes. The wife had earned $2,800 per month for her services at the store. The husband terminated her employment because he had decided they could no longer operate the *143 store together after their separation. From her earnings from the drugstore, the wife had purchased several parcels of real estate. At the time of the dissolution of marriage, the wife had sold some of her holdings for a profit and still owned some others. The wife has chosen voluntarily not to seek employment since her departure from the family drugstore.
The final judgment provided for the following distribution of the marital assets. The assets were shown at market value less encumbrances established by the trial judge after hearing conflicting evidence:

ASSET HUSBAND WIFE
Drugstore Operation $275,000
Drugstore Real Estate 67,000
Marital Home 20,000
Miscellaneous Personal Property Not Valued Not Valued
Candlelight Townhouse $ 32,000
Gainesville Condominium 17,000
London Terrace Lots 10,000
Jacobson Lots 
Damac Rental 8,000
Dafic, etc., Assignment 40,000
Montecalvo Mortgage 9,000
Ursula Agreement for Deed 23,000
Oakland Mortgage 14,000
 __________ __________
 $362,000 $152,000
Court-ordered obligation of husband
to wife to equalize distribution of
assets payable over 120 months at
$875 per month 
 __________ __________
 $257,000 $257,000
 ========== ==========

The liabilities of the parties and monthly servicing payments were not scheduled in the record, but it appears that the marital home is encumbered by two mortgages, the first of approximately $40,000 and the second of approximately $73,000, which together require total annual payments of $21,000. The second mortgage had been incurred to satisfy a federal tax lien imposed as a result of inventory and bookkeeping errors in the operation of the drugstore business and the failure to report some income from the real estate ventures. An unpaid joint tax liability of $34,628 still remains. The drugstore real estate and the wife's investment real estate are also encumbered.

HEALTH AND LIFE INSURANCE POLICIES
Two modifications to the final judgment would have little effect on the husband and would give some security to the wife and the minor son. Section 61.13(1)(b), Florida Statutes (1989), requires that an order for child support include a provision for health insurance when the insurance is reasonably available. The husband concedes that he maintains health insurance for his son and argues that there is no evidence that he will not continue to do so. Upon remand, the trial court should comply with the statute and require the husband to provide the insurance now in force. The trial judge should consider the extent to which the husband and wife should pay for uninsured medical expenses of the minor son.
The other modification is the use of the life insurance policy on the husband as security for the deferred payments of the amount equalizing the distribution of marital *144 property. The policy existed prior to the dissolution, and the wife was removed as beneficiary when discord began between the parties. The amount awarded to the wife in the form of deferred payments is fixed and survives any misfortune of the husband. The long-term payout of the judgment, however, subjects the collection of these fixed amounts to the misfortunes of life and business and should be secured either by the policy, if sufficient to provide the security, or by a lien upon the business assets and real property. See Fraga v. Fraga, 562 So.2d 851 (Fla. 3d DCA 1990).

PERMANENT ALIMONY
While the 1989 net income of the husband was $144,000, the wife's valuation expert testified that, without the drugstore, a pharmacist could anticipate an annual income of approximately $30,000. Selling the store in the near future appears to be an unreasonable alternative to raise funds to satisfy the $105,000 obligation to the wife, since the husband is dependent upon the income from the store to satisfy his alimony, debt service, and child support obligations, as well as to satisfy his living expenses. The parties were unsuccessful in their attempt to use the business assets as security for a loan to pay the federal tax assessment and were forced to encumber the residence with the second mortgage to raise the necessary funds. It appears that no funds will be available to the husband in the near future to satisfy the $105,000 obligation.
Testimony by both parties indicates only two potential sources of cash which must provide for their respective financial needs. Those two sources are the profits from the husband's drugstore business and the wife's earnings from employment should she obtain a job. Since the wife has chosen not to work and no evidence of a reasonable income was presented to impute to her, the only material source is the operation of the drugstore by the husband. The drugstore income is variable, a situation common to most retail businesses. In 1988, the husband had an adjusted gross income of $45,829, less taxes of $12,251 for a net of $33,578. In 1989, the adjusted gross income was $141,600, less taxes of $40,732 for a net of $100,868. Monthly income therefore approximates $2,800 per month in 1988 and $8,400 in 1989. The husband's financial affidavit of August 1989 indicated a monthly income of $5,814 and monthly expenses of $6,279. Approximately $3,000 of the expenses were used for the support of two adult sons enrolled in colleges and an adult daughter and her minor child who reside with the husband. The affidavit did not include a monthly allocation for repayment of the income tax deficiencies and debts.
The wife's affidavit reflected income of $282 per month from a mortgage receivable and expenses of $3,683 per month. If the husband's 1989 income were substituted for that shown on his financial affidavit and the trial court's award of alimony, child support, and equitable distribution were considered, the allocation of the higher income might be as follows:

 Monthly income after provision for income taxes $8,400
 Monthly expenses:
 As shown on 1989 affidavit $6,279
 Alimony $1,000
 Child support $1,000
 Payments to equalize equitable distribution of assets 875
 ______
 $9,154 $9,154
 ______
 Monthly deficit $ 754
 ======

*145 The above analysis is oversimplified since federal income taxes would be reduced somewhat by an income tax deduction for the alimony, but the monthly deficit would still not be eliminated.
The husband's monthly expenses still include approximately $3,000 that is devoted to the support of the parties' adult children. It becomes obvious that, if there is to be any modification of the trial court's award for alimony, child support, interest on the deferred payments to equalize distributions of marital property, and the wife's attorney's fees, it must come from a reduction of that expense. There is no legal obligation to support the non-dependent adult children of the parties. Grapin v. Grapin, 450 So.2d 853 (Fla. 1984) (requiring divorced parents to support adult child while child in college when other parents are not so compelled would be denial of equal protection); Carter v. Carter, 511 So.2d 404 (Fla. 4th DCA 1987) (parent has no legal obligation to support a child who has attained majority unless child is statutorily dependent).
While the husband's continuing support of his adult children and his desire to furnish them with a higher education is honorable, some reconsideration of his financial resources devoted to that desire must be made when marital discord arises, particularly when a wife of twenty-eight years now receives monthly support of approximately the same amount of support that each of their adult children receives, $1,000 per month. The record also reflects that the two sons, one of whom has received six years of college, were to graduate shortly after the final hearing before the trial court.
We recognize that the husband has a heavy debt load of over $280,000. The record is clear as to the amounts owed, but it is difficult if not impossible to glean from it the manner in which these debts are repayable. However, over $100,000 of these debts likely will be satisfied when the husband has sold his residence.
We believe that the wife was shortchanged in the $1,000 per month alimony awarded to her. While the husband's responsibility to other dependents for support needs may be considered when determining a spouse's financial ability to pay as stated in Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980), the adult children in the instant case do not qualify as dependents. The deletion of the expenses for these non-dependents places the husband in a more favorable financial posture, although not exceedingly so in view of his sizable debts. On the other hand, the wife has a monthly deficit of approximately $1,400 per month after receipt of the alimony, the child support, and the mortgage receivable. While the husband need not be required to supply the entire monthly deficiency in view of the wife's ability to work, we remand to the trial court for reconsideration of an increase in permanent alimony based upon the criteria set forth in Canakars and the application of that criteria in previous decisions. See, e.g., Hanks v. Hanks, 553 So.2d 340 (Fla. 4th DCA 1989) (award of $1,000 permanent alimony inadequate where husband's income was $55,000 and wife's expenses shown on her affidavit were nearly three times the award of alimony); Bain v. Bain, 553 So.2d 1389 (Fla. 5th DCA 1990) (where husband's annual income is $63,000, award of $680 biweekly would be proper had assets been equitably distributed, but wife's age and health made employment questionable).

INTEREST ON PAYMENTS TO LEGALIZE DISTRIBUTION OF MARITAL ASSETS
An appellate court must review the overall scheme of a property and alimony distribution when considering whether or not the trial court abused its discretion in entering the judgment. Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). The imposition of interest on payments to be made in equitable distribution is a discretionary matter with the trial court. See Cotton v. Cotton, 439 So.2d 309 (Fla. 2d DCA 1983), review denied, 447 So.2d 886 (Fla. 1984). The imposition of *146 interest on the payments to be made in the instant appeal would substantially impact the overall scheme already developed by the trial court, especially since such consumer interest might be nondeductible on the husband's federal income tax return and taxable to the wife. See Frumkes, Installment Payments of the Equitable Distribution Award in Dissolution of Marriage Proceedings, FLA.B.J., Feb. 1992, at 50-52.
No evidence was presented at trial whether and to what extent the wife's receipt of the equalizing distribution likely would be taxable. In Fraga, 562 So.2d 851, the Third District instructed that a judgment granting a ten-year payout of a $500,000 equitable distribution be at present value and secured by a lien against an interest in a medical center. In Fraga, the court indicated that the distribution was totally taxable. Fraga, at 852. Tax planning should be an important consideration in the division of property and the award of alimony in marital dissolutions. Sweeney v. Sweeney, 583 So.2d 398 (Fla. 1st DCA 1991) (tax consequence of former spouse's filing individual return to be considered on remand when reevaluating the entire equitable distribution); Calamore v. Calamore, 555 So.2d 1302 (Fla. 4th DCA 1990) (trial court improperly ignored evidence of tax consequence presented by husband's accountant regarding a retirement plan in equitably distributing assets); Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980) (if award intended to balance assets between parties, trial court should have taken into account the tax consequences of award).
In the instant case, the interest payments requested by the wife, together with the possibility that the husband will be unable to obtain a tax deduction for these payments, would have a substantial impact on the husband's after-tax income available to provide a reasonable amount of alimony. The interest requested at the legal rate of 12% per annum would approach $12,000 in the first year, and when added to the husband's current obligations to the wife, the payments to her would stand a reasonable chance of claiming 50% of the husband's annual disposable income.
We do not direct the trial court on remand to award interest. Neither do we preclude an award of interest or any other recognition of the present value of the deferred obligations. The trial court should make this decision in conjunction with its decision regarding the alimony increase and in light of its overall scheme to "do equity between the parties." Canakaris, at 1202. The trial court may, in its sole discretion, choose to give the parties an opportunity to present additional evidence as to the possible tax consequences of various alternatives.

WIFE'S ATTORNEY'S FEES
The record before us indicates that the husband is in a far better financial position than the wife to obtain counsel and pay attorney's fees. Admittedly, this conclusion is somewhat strained by the inability to glean from the record just what the husband's monthly obligations are in view of the need to retire and service the installment obligations. Also, the record does reflect that, between the date of their separation and the time of trial, the wife had voluntarily obligated herself to make sizable payments on some acreage that she had committed to purchase, thereby showing an inclination to ignore the fact that she would be incurring legal fees. It is not necessary, however, that a spouse be completely unable to pay attorney's fees before an award is appropriate where the other party has a superior financial ability to secure counsel. See Deakyne v. Deakyne, 460 So.2d 582 (Fla. 5th DCA 1984). It appears that the wife should have some contribution towards her attorney's fees, and upon remand the trial court shall consider the award of a partial fee.

CONCLUSION
In summary, we remand for the modification of the final judgment to require the husband to provide health insurance for his minor son and to secure payment of the deferred distribution of marital assets with his pre-existing life insurance policy or with *147 a lien on his business assets and real property. The trial court should reconsider the overall scheme of the types of property distributed to the respective parties, the income of the parties, and their financial needs and obligations in making some increase in the permanent periodic alimony, awarding the wife some of her attorney's fees and determining whether interest is appropriate on the deferred payments.
AFFIRMED in part; REVERSED in part; REMANDED.
COWART and DIAMANTIS, JJ., concur.
W. SHARP, J., concurs specially with opinion in which GOSHORN, C.J., and GRIFFIN, J., concur.
HARRIS, J., dissents with opinion in which DAUKSCH and COBB, JJ., concur.
W. SHARP, Judge, concurring specially.
I originally concurred in Judge Sawaya's opinion in this case, a visiting judge who sat with this court. He reached substantially the same conclusions for the same reasons as are stated by Judge Peterson in his majority opinion. Judge Sawaya said:
In summary, we find that the lower court abused its discretion in not requiring the husband to provide health insurance for the child; in failing to require the husband to provide security for his equitable distribution obligation and to pay interest thereon; in awarding only $1,000 per month for alimony; and in not requiring the husband to pay at least a portion of the wife's legal fees. We therefore reverse those relevant portions of the final judgment and remand this cause back to the trial court for further proceedings consistent with this opinion.
Judge Peterson says:
In summary, we remand for the modification of the final judgment to require the husband to provide health insurance for his minor son and to secure payment of the deferred distribution of marital assets with his preexisting life insurance policy or with a lien on his business assets and real property. The trial court should reconsider the overall scheme of the types of property distributed to the respective parties, the income of the parties, and their financial needs and obligations in making some increase in the permanent periodic alimony, awarding the wife some of her attorney's fees and determining whether interest is appropriate on the deferred payments.
If there is any difference in the two opinions it turns solely on the issue of interest. In Judge Sawaya's opinion, he said that if, on remand, the trial court chooses to continue to defer payment of the $105,000 equitable distribution of marital assets to the wife over a ten year period (but he did not require that the trial judge do so), the deferred payments should not only be secured but they should bear interest at the "legal" rate of twelve percent. It is obvious that failure to require payment of a fair rate of interest over such a long time period reduces the actual present value of the distribution.
In this case, the appealed equitable distribution of marital assets (wife's one-half share of family business  $105,000  payable to her over ten years at $875 per month without interest) is far from "equal" (or one-half the present value) because of the long delay in payment and lack of payment of interest. However, Judge Sawaya's opinion, as does Judge Peterson's opinion, did not require payment of interest, if the equitable distribution were made earlier. Nor did it require payment of twelve percent interest unless the deferred payment lasted ten years. In sum, the differences between the opinions are so slight, I concur with both. However, I continue to question why this case was en banc'd in the first place.
GOSHORN, C.J., and GRIFFIN, J., concur.
HARRIS, Judge, dissenting.
I dissent. I believe the trial court reached an equitable result albeit in a somewhat unusual manner.
The question, as I see it, is how much "support" should the wife receive from her husband in order to support herself in the same general standard of living enjoyed *148 during the marriage. The amount chosen by the court seems appropriate; the manner in which it was awarded has caused this en banc opinion.
The record indicates that the husband, a pharmacist, earns about $30,000 per year from his profession; he earns approximately $40,000 per year extra[1] from the operation of the drug store in conjunction with his profession. But the drug store business and real property were marital assets valued at $342,000[2] which the court divided evenly and required the husband to purchase the wife's share. It seems somehow unfair to require one "partner" to buy out the other and yet remain obligated to share the profits of the business with the selling partner. The court did that here by determining alimony on the basis of the husband's total income.[3] In an effort at fairness, the court "charged" the wife with the income she would otherwise receive from the deferred payment for the buy-out.
Normally any deferred payment should bear interest. However, since the interest is about the same as the alimony awarded, I would uphold the trial court. It should be noted that if you eliminate the profits from the business marital asset purchased from the wife from the husband's income, he has additional income of approximately $30,000 on which to base alimony. But the wife was making $33,600 while serving as manager and bookkeeper of the family business. There is no showing  except her desire not to work in the future  that she could not earn a comparable amount in a similar position. If she is truly unemployable, then alimony would be warranted on the basis of the husband's professional earnings. Even so, it would be inappropriate to base alimony on the former marital standard of living when that standard was established on the combined economic contributions of both parties.
I believe the trial court's overall distribution of this "bundle of sticks" is within its considerable discretion and I would affirm. Since we are remanding, I would urge the court to consider the wife's voluntary retirement as well as the income earned from the buy-out (if interest is awarded) including income generated from the other property distributed to her as part of the purchase of the business in determining the amount, if any, of permanent alimony.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] The husband's income varies depending on the economic climate so this amount is based on an average of the husband's adjusted income for 1988 and 1989.
[2] This figure was based on an expert's testimony which relied on the "average cash flow of earnings."
[3] I submit that the buy-out of the business marital property is not unlike the division of a pension marital asset. Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986) holds that the pension plan may be either a marital asset subject to division or a source of income for alimony. The court then stated:

Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations.