625 So.2d 1320 (1993)
Lou Jean MILLER, Appellant,
v.
James Homer MILLER, Appellee.
No. 93-240.
District Court of Appeal of Florida, Fifth District.
November 5, 1993.
*1321 Michael Sigman of Law Offices of Michael Sigman, Orlando, for appellant.
Robert W. Kieffer, Orlando, for appellee.
PETERSON, Judge.
Lou Jean Miller appeals the portions of a final judgment of dissolution of marriage which award lump sum alimony and distribute marital assets. At the time of dissolution of this 27 year marriage, the husband was 70 years old and the wife was 61 years old and in ill health.
We vacate the portions of the final judgment awarding alimony and distributing assets because the judgment fails to contain sufficient findings with respect to the values of the significant marital assets.[1] The absence of those findings frustrates meaningful appellate review and we must remand this case to the trial court for findings consistent with the requirements of sections 61.075(3) and 61.08(1), Florida Statutes (1991).
We are concerned that, for purposes of evaluating marital assets, trial counsel failed to take into consideration the effect of income taxes. Consideration of the consequences of income tax laws on the distribution of marital assets and alimony is required and failure to do so is ordinarily reversible error.[2]Rey v. Rey, 598 So.2d 141, 146 (Fla. 5th DCA 1992); Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980); Nicewonder v. Nicewonder, 602 So.2d 1354 (Fla. 1st DCA 1992); Blythe v. Blythe, 592 So.2d 353 (Fla. 4th DCA 1992); Werner v. Werner, 587 So.2d 473 (Fla. 3d DCA 1991), rev. denied, 599 So.2d 661 (Fla. 1992); Sweeney v. Sweeney, 583 So.2d 398 (Fla. 1st DCA 1991); Cameron v. Cameron, 570 So.2d 1087 (Fla. 1st DCA 1990); Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990); Ellis v. Ellis, 461 So.2d 190 (Fla. 4th DCA 1984).
In the instant case, the wife was awarded the marital home and the husband was awarded all of the stock of the corporation producing the income upon which they depended for living expenses. We suspect from our review of the record that the corporate stock has a low federal income tax basis. The basis of the marital residence is probably insignificant since, if wife sold it, she would most likely escape taxation on any profit up to $125,000. 26 U.S.C. § 121. If both of the assets are sold relatively soon after the dissolution, a likely prospect in view of the ages of the parties, the tax consequences would create an inequitable disparity favoring the spouse receiving the marital residence. It cannot be said that valuation of assets without taking into account the tax consequences is fairly reflective of the market value of the assets to the parties. Nicewonder v. Nicewonder, 602 So.2d 1354, 1358 (Fla. 1st DCA 1992) (Zehmer, J., concurring). Tax consequences are often ignored. On remand, we encourage the parties to present competent evidence regarding the income tax consequences of the distribution of the marital property and of any award of alimony.
Upon remand the trial court is free to fashion another method of distribution if the findings of the court warrant it. The court and the parties should consider the advantages and disadvantages of lump sum alimony and permanent periodic alimony or some combination thereof. Petticrew v. Petticrew, 586 So.2d 508 (Fla. 5th DCA 1991) (lump sum alimony is not modifiable); Pimm v. Pimm, 601 So.2d 534 (Fla. 1992) (permanent alimony can be subject to modification where obligor spouse over age 65 voluntarily retires); Hamlet v. Hamlet, 552 So.2d 210, 211 (Fla. 5th DCA 1989) (Sharp, W., J., dissenting) ("[E]quitable distribution encompasses more than a distribution of assets. It involves a combination of such remedies as lump sum *1322 alimony, permanent periodic alimony, and exclusive use of property."), reversed, 583 So.2d 654 (Fla. 1991). We also note that a court may secure payment of alimony by appropriate means. § 61.08(3), Fla. Stat. (1991).
The portion of the final judgment dissolving the marriage is affirmed.
AFFIRMED IN PART; REVERSED IN PART, and REMANDED.
HARRIS, C.J., concurs.
W. SHARP, J., concurs specially, with opinion.
W. SHARP, Judge, concurring specially.
I agree this case must be reversed and remanded for findings required by section 61.075(3) as to the identity of marital assets, their valuation, and their ultimate disposition to the parties (outright or by way of substitution of assets). See Plyler v. Plyler, 622 So.2d 573 (Fla. 5th DCA 1993); Bussey v. Bussey, 611 So.2d 1354 (Fla. 5th DCA 1993); Moreno v. Moreno, 606 So.2d 1280 (Fla. 5th DCA 1992). Until those findings are made, an appellate court cannot undertake a meaningful review of the appealed judgment.
In addition, the trial court is directed by section 61.075(3) to specify the factors listed in section 61.075(1), or "[a]ny other factors necessary to do equity and justice between the parties," which support the trial court's distribution of marital assets and liabilities. This requirement applies whether the marital asset distribution is 50/50 or lopsided, although the more lopsided, the more factors supported by competent substantial evidence in the record should be required. No factors were given here.
In this case, it is difficult to tell whether the trial court intended to evenly distribute the parties' marital assets, or whether one party was intentionally to be favored over the other and if so, which one. The former wife received a net total of $119,000 of the parties' marital assets (exclusive of lump sum alimony); and the former husband received possibly as much as $150,000 (if the court valued the parties' stock-ownership interest in their business at $130,000, as testified to by the former wife). Such a lopsided distribution requires some justification, or reference to factors.
However, the court also awarded the former wife $80,000 lump sum alimony, payable at $2,500 per month over a less than three year interval. Part of that sum might be equitable distribution of a compensating asset to equalize the court's distribution of marital assets. But, if all of the $80,000 is considered distribution of marital assets, the court has made a lopsided distribution favoring the former wife, without any explanation or reference to factors.
If it were the trial court's intent to award the former wife a lesser share of the marital assets to be balanced by an award of lump sum alimony, I am concerned about the decree's failure to protect her need for support for the balance of her lifetime. None of the assets she received are income-producing. The major asset she received was the marital home (equity of $119,000) where she is living.
The former wife is sixty-one years old and in very poor health. She has no source of income and is not employable. This was a twenty-seven year marriage. In such cases, permanent alimony is generally awarded. See Fontana v. Fontana, 617 So.2d 418 (Fla. 1st DCA 1993). A needy spouse should not be forced to consume his/her share of the marital-asset distribution to live on, if the award truly is equitable distribution of marital assets. See Sinclair v. Sinclair, 594 So.2d 807 (Fla. 3d DCA 1992); Hanks v. Hanks, 553 So.2d 340 (Fla. 4th DCA 1989); DeCenzo v. DeCenzo, 433 So.2d 1316 (Fla. 3d DCA 1983).
The dissolution decree in this case awards the former wife no permanent periodic alimony. After less than three years, she will have no source of income, and the former husband's financial obligations to her will be extinguished. In addition, there is no insurance or security requirement made by the decree to guarantee that she will (in fact) receive the $80,000. Given the former husband's age (seventy-one), that is a problem.
Finally, I agree with the majority that tax considerations are appropriate factors in making equitable distributions of marital assets. See Rey v. Rey, 598 So.2d 141 (Fla. 5th *1323 DCA 1992); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981). However, they may not be relevant in every case. If the marital distribution decree requires one spouse to transfer property to the other, or sell property and pay the proceeds to the other, and those actions have significant tax consequences for one party or the other, those consequences should be weighed in arriving at an equitable distribution of the assets.
In this case, I disagree with the majority that the trial court must consider capital gains tax consequences if the former wife sells the marital residence. She has no plans to sell the marital residence. She has no other place to live. Indeed, she may be forced to sell it, if she receives no permanent alimony with which to pay the mortgage, and her own living expenses. But that is not a direct result of this dissolution decree.
Nor do I think the trial court must consider the tax results of what might occur, if the former husband sells the parties' closely held corporation or business. The former husband has no plans to sell the business, which has provided the parties with their primary support for many years.[1] He is in good health, and testified he enjoyed his work so much he had no desire or plans to sell out and retire. Further, there are many different ways to sell a closely held business, and they can result in a variety of tax consequences.
If the trial court determines the lump sum award is all support, the former wife could have an adverse income tax consequence, and the former husband could have a favorable tax consequence (i.e., a deduction against gross income), both of which should be considered.[2] However, as the present decree stands, I disagree that the trial court must consider the capital gains or income taxes the former husband would have to pay, if he were to sell the business in the immediate future and balance that with the potential tax break the wife could receive if she sells the marital residence. Equitable distribution of marital assets should not require their theoretical liquidation and consideration of speculative tax consequences, unless they result from the decree itself or are contemplated by the decree.
NOTES
[1] The significant assets were the marital residence and stock of a corporation owned entirely by the parties and operated solely by the husband. The corporation provided all of the income of the parties except social security income. While the value of the home was included in the findings by the trial court, the amount of the liens thereon and the value of the stock were not.
[2] Of course, a trial court cannot be faulted for not considering the tax consequences if counsel for the parties neglect to present evidence on the subject.
[1] In 1991, the business grossed over $200,000 per year and netted over $61,000.
[2] See Divorce and Separation, 95 Tax Management Portfolio (BNA), A 1-9 (5th ed.); 26 U.S.C. §§ 71 and 215.