W. SHARP, Judge.
Sandra Brock, the former wife, appeals from a final judgment of dissolution which terminated her twenty-five year marriage to Newman Brock, the former husband. She argues that the trial judge erred in making equitable distribution of the parties’ marital assets because the judgment failed to identify the marital assets, failed to value the assets, and failed to dispose of all of the marital assets and liabilities. She also argues the trial court breached its discretion in making the equitable distribution award and the alimony award because it failed to consider the tax consequences of the awards and it unfairly imputed a high income to her from her inherited investments. Finally, she argues the trial court erred in denying her an award of costs and attorney’s fees, in view of her former husband’s superior income-earning capacity and financial resources. We agree in part, and reverse.
This was a long term marriage, during the course of which two children were born. At the time of the final hearing, both had attained 18 years of age. The son had just *739 entered college and the daughter had just graduated, and was contemplating entering law school. For the former wife, this had been an old fashioned kind of marriage, during which she devoted herself to raising the children, being a housewife, and assisting her husband in his law career, which culminated in his election as a circuit judge in 1991. The trial court found that both parties contributed equally to the marriage, and it felt it should equally distribute the marital assets, and seek to “equalize” the parties’ incomes, because there was not enough income or income earning potential to allow both parties to afford the same standard of living they enjoyed while they were married.
I. Equitable Distribution of the Parties’ Marital Assets
In the final judgment, the trial court simply allocated a list of assets to the former wife, and a list to the former husband. No values are found for many of the assets distributed. Specifically, no values are given by the court for the marital residence and furnishings, and the Mazda automobile, which were awarded to the wife; and no values were given for the rental property, the Lexus automobile, and office equipment, which were awarded to the husband. And there is no provision in the judgment to allocate the marital liabilities to one party or the other.
One obvious inequity resulting from this over-sight is the apparent allocation of the Lexus finance debt to the former wife. The Lexus had been financed through a home equity loan placed on the marital residence. The Lexus was distributed to the former husband, while the residence was distributed to the wife, thereby reducing the value of the distribution to her by the debt owed on the Lexus.
Another defect in the equitable distribution plan created by the final judgment is its failure to identify as a marital asset, and equitably distribute a $58,000.00 legal fee earned by the former husband during the marriage. He testified the fee had been earned as a result of his work as an attorney during the marriage, but he received it after the parties separated. It was not a contingency fee. He admitted he deposited the $58,000.00 in his sole bank account. At the time of the final hearing, he testified there remained only $48,000.00, and that some of the fee had been spent on taxes. Whether or not the $10,000.00 expenditure discharged a marital liability of the parties, or just the former husband’s,[1] clearly the legal fee was a marital asset,[2] which should have been so identified and distributed as part of the marital assets. Because that asset is substantial, it alone could make the distribution of marital assets unequal, a result not intended by the trial court, nor sought to be justified.
The former wife also argues that the trial court erred in not valuing or making an immediate award to her of a portion of her former husband’s state retirement pension earned as a judge, during the parties’ marriage. Since the former husband only became a judge in 1991, and the wife filed the petition for dissolution in 1994, this marital asset would not have been very substantial. Nevertheless, it clearly was a marital asset.[3]
The trial judge refused to make any ruling on the retirement pension, because as he explained at the hearing, it was not yet “vested.” However, that is no reason not to recognize it as a marital asset. If determining a present value of the marital portion of the pension at the time of the final hearing was too expensive or speculative, the court could have made an award of a portion of the future payments when and if received by the former husband.[4] The provision in the judgment which retains jurisdiction to conduct post-judgment proceedings on the former wife’s “claim” to an interest in the pension *740 does not give her a clear interest nor an effective remedy.[5]
Section 61.075(3) requires that any distribution of marital assets or liabilities be supported by written fact findings in the judgment. These findings should include identifying all the parties’ substantial marital assets, and valuing the marital assets and liabilities, as of an appropriate date.[6] The court should distribute all marital property and liabilities.[7] The court should articulate reasons for any unequal distribution of the marital assets and liabilities, as well as an equal one.[8]
The court made findings sufficient to justify a close to equal distribution of the parties’ marital assets. The problem in this case is that we cannot determine from a review of the judgment, whether or not there was a close to equal distribution of marital assets and liabilities because there are insufficient value findings, and identification of marital assets and debts. This constitutes reversible error. See Lavelle v. Lavelle, 634 So.2d 1111 (Fla. 2d DCA 1994); Carroll v. Carroll, 471 So.2d 1358 (Fla. 3d DCA), rev. denied, 482 So.2d 347 (Fla.1985).
Further, the record on appeal is lacking as to evidence to support findings on valuation for some of the marital assets, since none was presented at the final hearing. Behind the statute’s requirement of fact findings, which burdens both trial counsel and trial judges in dissolution cases, is the concomitant requirement that there be competent substantial evidence in the record to support those findings.[9] This is the attorneys’ or pro-se parties’ burden. A trial judge cannot create findings out of thin air.
The recourse in such eases is to reverse and remand for the purpose of reconsidering and reconstituting the final judgment.[10] If necessary, and appropriate, the trial judge may take additional testimony to determine proper valuation of assets, and liabilities. See Cortez-Williams v. Douglass, 659 So.2d 1250 (Fla. 1st DCA 1995); Saare v. Saare, 610 So.2d 628 (Fla. 1st DCA 1992); Nicewonder v. Nicewonder, 602 So.2d 1354 (Fla. 1st DCA 1992). In addition, the trial court may reconsider the alimony award and its denial of attorney fees and costs to the former wife, since these awards are necessarily part of the total scheme of achieving equity between divorcing parties.[11] However, we note infra some additional problems with the judgment under review regarding the determination of the amount of alimony and denial of an attorney’s fee award to the former wife, in order to provide guidance on remand.
II. Amount of Permanent Alimony Award; Denial of Award of Attorney Fees to The Former Wife
One problem with reviewing the propriety of the permanent alimony award of $1,300 per month to the former wife, and the trial court’s denial of any attorney’s fee or cost award to her, is that the trial judge used gross income figures to compute the former wife’s projected future income, and net figures in computing the former husband’s. The trial court found that the former wife’s “potential income” (without alimony) was $44,000 to $47,000 per year. This sum was calculated by imputing a gross income to the former wife of $12,000 to $15,000 per year, working at a minimum wage-earning job as she had no current work or job skills, and *741 $32,000 per year from “prudent investment of her liquid assets.” She had inherited approximately $444,000.00 in stocks and bonds from her family. These projected incomes are all gross figures.
However, the trial court found that the former husband’s income as a circuit judge was $72,000 “net,” plus $3,500 from other assets. Computation of the former husband’s net earnings as a circuit judge was achieved by deducting amounts for life insurance, health insurance, social security, retirement, medicare, and income tax from his gross earnings. Comparing net incomes with gross incomes is like comparing “apples to oranges,” to use a grossly over-worked metaphor. Net figures should be used for both parties.[12]
Further, in projecting a $32,000 per year gross income to the former wife to be earned by her inherited assets, it appeal’s the trial judge took the most optimistic figure postulated by the investment expert witness, without discounting or considering the cost of moving the former wife’s investment portfolio into high-income, low growth-type of investments, from the mix of nontaxable and taxable, growth and moderate-income investments in which the wife’s portfolio was currently invested. This transformation would be costly to her, the investment witness testified, because she would have to pay commissions, capital gains taxes, and penalties to prematurely move assets out of her IRA. The tax consequences of such mandated asset transfers should be considered by the trial court.[13]
The investment witness testified that during the prior year the former wife’s investments had earned a gross amount of $28,-890.30, but that included deferred funds and funds reinvested in an annuity. The money she actually received was $24,914.17, of which $2,295 was taxable. He also predicted her income would drop the next year because she had a $175,000.00 tax-free insured bond which was about to mature. It earned interest at 8| percent, but in the current market it could not be replaced. The highest tax free bonds produce interest at 6.8%, but they are not insured.
He also testified that the highest interest he could generate without jeopardizing her capital by risky investments was 7% to 8%. That would require moving her entire portfolio out of her current investments, with the costs noted above. He pointed out that the income produced would be taxable and there would be no growth in principal, through appreciation. This would ultimately cause the former wife’s principal to erode because of the effects of inflation, over time. His testimony was not refuted.
The projection of a $32,000 gross income to be earned on $444,000 in assets is equivalent to obtaining gross earnings in excess of 7%. In order to net $32,00Q, it would likely require a 10% return on the assets, which the investment witness testified was not available. It is not reasonable to project a maximum net income from assets which are not sufficient to produce it. Nor is it equitable to require an investor to reinvest assets in a manner which will result in losses through fees, taxes, cost, penalties, and loss of principal due to inflation.[14] Such an investment strategy is not in fact “prudent.”
*742 The trial judge also elected not to take into consideration the former husband’s substantial potential inheritance from his father. Testimony at trial established the inheritance was worth nearly one million dollars. The former husband was the sole named heir and beneficiary. Two siblings were contesting his sole inheritance. The judge expressly said he was not giving the former husband’s future inheritance any weight because his right to inherit the whole (rather than one third) of his father’s estate was not settled. He had won at the trial court level, but that decision had been appealed.
We cannot say the trial judge abused his discretion in this regard. See Shiveley v. Shiveley, 635 So.2d 1021 (Fla. 1st DCA 1994). However, on remand, the court should revisit this issue, if the husband’s inheritance has become a reality. The inheritance could serve as a basis for modification of the alimony award.[15] To short-circuit more litigation in this case, if settled, the former husband’s inheritance should be considered on remand.[16]
The extent of the parties’ incomes from all sources and the reasonable income-earning abilities of the parties’ are essential parts of the 'equation in determining whether permanent alimony is appropriate, and if so, the proper amount, and in determining the parties’ comparable financial circumstances, to justify or deny an attorney’s fee and costs to the spouse with less resources.[17] The trial court stated it was attempting to “equalize” the parties’ incomes, after the dissolution. Although that may be appropriate in some cases, here the goal should be to base the award (if appropriate) on an amount sufficient to meet the former wife’s reasonable needs measured by the parties’ former marital standard of living,[18] to the extent she cannot reasonably be expected to meet those needs from her own earnings and separate income.[19] It should be limited by the former husband’s ability to meet those needs, from his earnings and separate income sources.[20] An award of attorney’s fees and costs is appropriate if the parties are not in relatively equal financial circumstances, after the dissolution.[21] On remand, these determinations should be made anew.[22] We affirm the judgment of dissolution, but reverse the financial provisions of the judgment, and remand for further proceedings consistent with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
GRIFFIN and THOMPSON, JJ., concur.

. It appears the parties had been filing separate tax returns.

. See Brotman v. Brotman, 528 So.2d 550 (Fla. 4th DCA 1988); Rosenfeld v. Rosenfeld, 597 So.2d 835 (Fla. 3d DCA 1992); § 61.075(5)(a), Fla.Stat. (1995).

. § 61.076, Fla.Stat. (1995); Vaccaro v. Vaccaro, 677 So.2d 918 (Fla. 5th DCA 1996).

. Kirkland v. Kirkland, 618 So.2d 295 (Fla. 5th DCA 1993); DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA 1991); Moon v. Moon, 594 So.2d 819 (Fla. 1st DCA 1992).

. See Eckroade v. Eckroade, 570 So.2d 1347 (Fla. 3d DCA 1990).

. § 61.075(6); Huber v. Huber, 687 So.2d 42 (Fla. 5th DCA 1997).

. § 61.075(1), Fla.Stat.

. § 61.075(1), Fla.Stat.

. Eckroade v. Eckroade, 570 So.2d 1347 (Fla. 3d DCA 1990).

. See Reich v. Reich, 652 So.2d 1200 (Fla. 4th DCA 1995); Miller v. Miller, 625 So.2d 1320 (Fla. 5th DCA 1993); Dyson v. Dyson, 597 So.2d 320 (Fla. 1st DCA 1992);Moon v. Moon, 594 So.2d 819 (Fla. 1st DCA 1992); Polley v. Polley, 588 So.2d 638 (Fla. 3d DCA 1991); Spillert v. Spillert, 564 So.2d 1146 (Fla. 1st DCA 1990), rev. denied, 576 So.2d 291 (Fla.1991).

. Noah v. Noah, 491 So.2d 1124, 1128 (Fla.1986); Haddad v. Haddad, 686 So.2d 788 (Fla. 5th DCA 1997); Weinstock v. Weinstock, 634 So.2d 775 (Fla. 5th DCA), rev. denied, 641 So.2d 1347 (Fla.1994).

. See Warren v. Warren, 629 So.2d 1079 (Fla. 3d DCA 1994).

. McLean v. McLean, 652 So.2d 1178 (Fla. 2d DCA 1995); Miller v. Miller, 625 So.2d 1320 (Fla. 5th DCA 1993) (Sharp, W., J., concurring specially); Nicewonder v. Nicewonder, 602 So.2d 1354 (Fla. 1st DCA 1992); Blythe v. Blythe, 592 So.2d 353 (Fla. 4th DCA 1992); Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990); Calamore v. Calamore, 555 So.2d 1302 (Fla. 4th DCA 1990).

. Stodtko v. Stodtko, 636 So.2d 814 (Fla. 3d DCA 1994) (error to impute earnings to husband higher than he had ever earned in his job as construction worker, for child support purpose); Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990) (error to require former husband to exhaust principal assets to meet support obligations); DeCenzo v. DeCenzo, 433 So.2d 1316 (Fla. 3d DCA 1983); In re Marriage of Jones, 357 So.2d 439 (Fla. 2d DCA 1978). Cf. Sinclair v. Sinclair, 594 So.2d 807 (Fla. 3d DCA 1992) (error to require former wife to deplete capital assets to maintain marital standard of living); Kaufman v. Kaufman, 541 So.2d 743 (Fla. 3d DCA 1989) (error to require former wife to deplete capital assets for support before seeking modification).

. See Selembo v. Selembo, 591 So.2d 1112 (Fla. 2d DCA 1992); Bedell v. Bedell, 523 So.2d 166 (Fla. 1st DCA 1988).

. See Stewart v. Rich, 664 So.2d 1145 (Fla. 4th DCA 1995); Kanouse v. Kanouse, 549 So.2d 1035 (Fla. 4th DCA 1989).

. Green v. Green, 542 So.2d 466 (Fla. 5th DCA 1989); § 61.08(2)(a).

. See Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA), 639 So.2d 978 (Fla.1994); Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA), rev. denied, 592 So.2d 679 (Fla.1991); Lanier v. Lanier, 594 So.2d 809 (Fla. 1st DCA 1992).

. See Carroll v. Carroll, 471 So.2d 1358 (Fla. 3d DCA), rev. denied, 482 So.2d 347 (Fla.1985).

. Gildea v. Gildea, 593 So.2d 1212 (Fla. 2d DCA 1992); Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA), rev. denied, 592 So.2d 679 (Fla.1991); McCloskey v. McCloskey, 359 So.2d 494 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla. 1979).

. Reich v. Reich, 652 So.2d 1200 (Fla. 4th DCA 1995); Kovar v. Kovar, 648 So.2d 177 (Fla. 4th DCA 1994); Gomez v. Gomez, 642 So.2d 107 (Fla. 3d DCA 1994); Stowell v. Stowell, 604 So.2d 940 (Fla. 4th DCA 1992); Green v. Green, 542 So.2d 466 (Fla. 5th DCA 1989); Benson v. Benson, 519 So.2d 1098 (Fla. 3d DCA 1988); Carroll v. Carroll, 471 So.2d 1358 (Fla. 3d DCA), rev. denied, 482 So.2d 347 (Fla.1985); McIntyre v. McIntyre, 434 So.2d 61 (Fla. 5th DCA 1983); DeCenzo v. DeCenzo, 433 So.2d 1316 (Fla. 3d DCA 1983);

. Cooper v. Cooper, 639 So.2d 153 (Fla. 2d DCA 1994); Dyson v. Dyson, 597 So.2d 320 (Fla. 1st DCA 1992); Shepard v. Shepard, 584 So.2d 1123 (Fla. 4h DCA 1991); Moore v. Moore, 543 So.2d 252 (Fla. 5th DCA 1989); Carroll v. Carroll, 471 So.2d 1358 (Fla. 3d DCA), rev. denied, 482 So.2d 347 (Fla.1985).