WALLACE, Judge.
Based on claims by Stanley A. Tarkow (the Former Husband) that his financial circumstances had changed substantially and that Miriam R. Tarkow, n/k/a Katherine Kofler (the Former Wife), is in a supportive relationship, the circuit court entered an order that substantially reduced the Former Husband’s permanent periodic alimony payments. The Former Wife appeals the order, and the Former Husband cross-appeals. On the appeal, we affirm in part and reverse in part; we affirm on the cross-appeal.
I. THE FACTS AND PROCEDURAL HISTORY
The parties were divorced in 2000 after twenty-eight years of marriage. On appeal from the final judgment of dissolution of marriage, this court reduced the amount of the permanent periodic alimony award to the Former Wife and affirmed the final judgment in all other respects. Tarkow v. Tarkow, 805 So.2d 854 (Fla. 2d DCA 2001).
In May 2010, the Former Husband filed a petition seeking a reduction or termination of his obligation to pay permanent periodic alimony. When he filed his modification petition, the Former Husband was obligated to pay the Former Wife $6000 per month in permanent periodic alimony. In support of his petition, the Former Husband alleged that there had been a substantial change of circumstances consisting of a significant reduction in his income. The Former Husband also alleged that the Former Wife was in a “supportive relationship” within the meaning of section 61.14(l)(b), Florida Statutes (2009). The Former Wife answered the modification petition and denied its material allegations. The circuit court referred the matter to a general magistrate (the GM).
After a hearing, the GM entered an extensive Report and Recommendation (the Recommended Order).[1] In the Recommended Order, the GM found that there had been a substantial change of circumstances based on a decrease in the *84 Former Husband’s income. The GM also found “that the change was not contemplated at the time of the final judgment, and that the change is sufficient, material, involuntary and permanent in nature.” In addition, based on the evidence and a review of the factors outlined in section 61.14(l)(b)(2), the GM ruled “that the Former Wife is in a committed and supportive relationship.” After analyzing the Former Husband’s ability to pay and the Former Wife’s current needs, the GM recommended that the Former Husband’s modification petition should be “granted to the extent that the Former Husband’s alimony obligation is reduced to $1294.06 per month.”
Both parties timely filed exceptions to the Recommended Order. After a hearing, the circuit court entered an order that denied the exceptions. The circuit court also approved and ratified the Recommended Order as an order of the court. The Former Wife moved for a rehearing of the circuit court’s order, and the circuit court denied the motion. The Former Wife appealed the order, and the Former Husband filed a cross-appeal.
II. DISCUSSION
On appeal, both parties raise multiple issues and sub-issues. We find merit only in two arguments made by the Former Wife. First, the Former Wife argues that the circuit court erred in failing to consider the income tax consequences of the reduced alimony award to the Former Wife in determining her need for continued support. Second, the Former Wife contends that the circuit court erred in failing to consider current information concerning her investment income. Because these are issues of law, our standard of review is de novo. Kaaa v. Kaaa, 58 So.3d 867, 869 (Fla.2010) (as revised on denial of rehearing).

A. The Income Tax Consequences of the Alimony Award.

The GM had before her a “Chart of Lifestyles Expenditures, January 2007 through December 2010,” submitted by the Former Wife. This chart listed the annual living expenses claimed by the Former Wife averaged over the four calendar years preceding the final hearing. The GM used this chart to calculate the amount of the Former Wife’s current living expenses. Among the expenses on the list was a $13,497 item for income taxes.[2] Thus the Former Wife’s “monthly need” calculation included the payment of income taxes. However, in calculating the Former Wife’s current needs, the GM declined to consider several entries on the chart, including the income tax expense.
The GM found the Former Wife’s current monthly need to be $5330.19, excluding the payment of income taxes. The GM calculated the Former Wife’s current monthly income from sources other than alimony — investments and retirement accounts — to be $4036.13. By subtracting the current monthly need of $5330.19 from the monthly income of $4036.13 that the Former Wife received from sources other than alimony, the GM arrived at a negative balance of $1294.06. This figure is the amount to which the GM recommended that the Former Husband’s monthly alimony payment be reduced.
Unfortunately, the GM’s calculations fail to take into account the effect of federal and state income taxes on the Former Wife’s needs. The Former Wife raised *85 this issue in her exceptions to the Recommended Order. Along with her exceptions to the Recommended Order, the Former Wife submitted a “FinPlan Schedule” that she asserted reflected “the necessary-amount of alimony needed to pay the State and Federal Income Tax liabilities attendant with the investment and retirement incomes found by the [GM].” The Former Wife also raised the income tax issue in her motion for rehearing. The circuit court did not address the issue of the Former Wife’s expenses for income taxes either in its order approving and ratifying the Recommended Order or in its order denying the Former Wife’s motion for rehearing.
Section 61.08(2)(h) requires that “in determining the ... amount of alimony ..., the court shall consider all relevant factors, including, but not limited to: [t]he tax treatment and consequences to both parties of any alimony award.” “It is error for the trial court to fail to consider tax implications of an alimony award when such evidence is presented.” Farley v. Farley, 800 So.2d 710, 712 (Fla. 2d DCA 2001) (citing Miller v. Miller, 625 So.2d 1320, 1321 (Fla. 5th DCA 1993)). Here, the Former Wife presented appropriate evidence to the GM and to the circuit court concerning the income tax implications of the alimony award and her need for continued support in an amount sufficient to enable her to pay her obligations for federal and state income taxes. In calculating the Former Wife’s current needs, both the GM and the circuit court failed to account for the income tax consequences of the award to the Former Wife and the Former Wife’s expenses for the payment of income taxes.

B. The Reduction in the Former Wife’s Investment Income.

The circuit court also erred in using outdated information to calculate the Former Wife’s investment income. The final hearing before the GM was originally scheduled for April 12, 2011, but the parties could not conclude the matter within the time allotted on that day. Two months later, on June 16, 2011, the parties reconvened before the GM to complete the final hearing. At the continuation of the final hearing, the Former Wife proffered evidence that her investment accounts had been reduced in value in the amount of $61,146 during the period between the two sessions. Although the Former Husband did not dispute the accuracy of this evidence, he objected to its admission. The GM sustained the objection and refused to consider the updated information. As a result, the GM used incorrect information to calculate the Former Wife’s income from her investments. Thus the GM’s calculations substantially overstated the Former Wife’s investment income going forward. The GM’s calculations of the Former Wife’s income from her investments should have reflected current reality. See Laz v. Laz, 727 So.2d 966, 967 (Fla. 2d DCA 1998); Greenberg v. Green-berg, 793 So.2d 52, 55 (Fla. 4th DCA 2001); Woodard v. Woodard, 634 So.2d 782, 783 (Fla. 5th DCA 1994).
The Former Wife raised the issue of the GM’s failure to consider the Former Wife’s current investment income in her exceptions to the Recommended Order and in her Motion for Rehearing. The circuit court did not consider this issue either in its order approving and ratifying the Recommended Order or in the order denying the Former Wife’s motion for rehearing.
III. CONCLUSION
By failing to consider the Former Wife’s expenses for federal and state income taxes and her current investment income, the *86 GM recommended an alimony award to the Former Wife in an amount that was less than necessary to meet her needs. The circuit court overruled the Former Wife’s exceptions and approved the recommended amount without addressing these issues. This constituted error.
Accordingly, on the Former Wife’s appeal, we reverse the amount of the reduction in the alimony award to the Former Wife. On remand, the circuit court shall reconsider the reduction in the amount of the alimony award to the Former Wife in light of the Former Wife’s income tax obligations and her current investment income. Upon such reconsideration, the circuit court shall adjust the amount of the reduction in alimony so that the Former Husband’s alimony obligation is sufficient to meet the Former Wife’s needs. On the Former Wife’s appeal, we affirm the order under review in all other respects. On the Former Husband’s appeal, we affirm the order under review.
Affirmed in part, reversed in part, and remanded.
CASANUEVA and SLEET, JJ., Concur.

. The Recommended Order consists of seventeen pages of detailed findings of fact and conclusions of law. We commend the GM, Mary Lou Cuellar-Stilo, for the effort she obviously devoted to the preparation of this Order. Her work has made this court's task *84 of appellate review much easier than it might have been in a case such as this.

. After the dissolution of the parties' marriage, the Former Wife relocated to California. The evidence at the final hearing established that she was liable for the payment of both federal and California income taxes.