IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ANTHONY J. LOSTAGLIO,

        Appellant/Cross-Appellee,

 v.                                                                    Case No.  5D14-3494

SHARON N. LOSTAGLIO,

        Appellee/Cross-Appellant.

_____/

Opinion filed September 16, 2016

Appeal from the Circuit Court
for Flagler County,
Dennis Craig,  Judge.

Theodore R. Doran and Carol A. Yoon, of
Doran, Sims, Wolfe & Ciocchetti, Daytona
Beach, for Appellant/Cross Appelle.

Horace Smith, Jr. and Sheila M. Ennis, of
Smith Bigman Brock, Daytona Beach, for
Appellee/Cross Appellant.


BERGER, J.

      Anthony Lostaglio (Husband) appeals the final judgment of dissolution, challenging

portions of the equitable distribution and the award of durational alimony.   Sharon

Lostaglio (Wife) cross-appeals, challenging the equitable distribution scheme and

alimony award.   We affirm the dissolution of the parties' marriage and the award of

durational alimony but reverse and remand for the trial court to recalculate the equitable distribution and reconsider the amount of durational alimony awarded to Wife.

Husband and Wife married on October 16, 1999. On March 8, 2011, Husband filed for divorce. They were married for eleven years and five months, during which Wife had an affair. Throughout their moderate-term marriage, Husband and Wife enjoyed a high standard of living.

The two met while they were both employed with IBM. At the time, Wife earned between $40,000 and $45,000 annually, while also receiving workers' compensation benefits in the amount of $520 per month. When Husband and Wife got married, the parties agreed that Wife would no longer work due to her health issues.[1] She has remained unemployed for fourteen years. Meanwhile, Husband has continued his career as a high-ranking executive with IBM and earns in excess of $450,000 per year.

In 2008, Wife, at the direction of Husband, settled her workers' compensation claim with IBM. The settlement money was then deposited into the parties' joint account to be used in the construction of the marital home located on the Intracoastal Waterway in Palm Coast, Florida. The parties put $500,000 cash down on the home and spent $1.8 million to build it. At the time Husband filed his petition for dissolution, the house was valued at $1,150,000, with a mortgage debt of $1,349,000.[2]

---

[1] Wife has a history of fibromyalgia, migraines, cervical cancer, carpel tunnel syndrome, depression, and multilevel degenerative disc disease. However, there was no evidence Wife was disabled.

[2] The trial court found that the marital home had a negative equity of $199,000 due to market decline.

Wife brought a number of premarital assets to the marriage, including a home, investment accounts, an IRA account that was funded in part by a rollover from a 401(k) plan in the amount of $130,000, an annuity worth approximately $90,000, and the workers' compensation claim. These assets, valued at more than $400,000, were liquidated and used to purchase the parties' marital homes in North Carolina and Palm Coast.[3]

Husband consistently showed a surplus on his financial affidavits. By the time of trial, his monthly income had increased from $18,670 in July 2013 to $20,330.59 in April 2014, not including stock options in excess of $18,246 per month. While the case was pending, Husband exercised his stock options to pay down roughly $90,000 of the $135,000 equity line of credit, and to pay off Wife's credit card debt in the amount of $48,000. He also used the money to fund the parties' standard of living, pay household expenses, marital debt, and other expenses that did not exist prior to separation, such as temporary alimony and attorney's fees. There was no evidence that either party dissipated assets.

In September 2011, the parties stipulated to the following:

> 1. The parties have been residing together and all of the Wife's needs have been provided for by the Husband. Beginning on September 8, 2011, Wife shall vacate the marital home and take her clothing and personal items.
>
> 2. In light of the parties [sic] separation, Husband shall pay temporary alimony to the Wife in the amount of $5,300.00 per month beginning September 16, 2011, and continuing on the sixteenth day of each and every month thereafter, until further order of the Court.

---

[3] Wife depleted all of her premarital assets while Husband retained a number of his, including the premarital portions of his 401(k) and pension.

Accordingly, Wife began receiving $5300 in temporary alimony beginning September 16, 2011.

At trial, Wife testified that the $5300 in temporary alimony did not meet her ongoing needs, and that she had a deficit each month. This deficit included Wife's income tax liability on the temporary alimony in the amount of $658.58 per month, as well as monthly health insurance costs between $500 and $600. According to Wife's financial affidavit, her basic needs totaled $7035 per month. In order to meet the standard of living she enjoyed during the marriage and to cover her health insurance costs, Wife claimed that her post-dissolution needs would be $9900 per month. Wife testified that her monthly deficit would increase to $5528 per month if she lived in a manner approaching the marital standard of living. Husband, however, enjoys a surplus each month ranging from $3000 to $7000, after paying monthly expenses of $16,000 to $22,000.

The trial court ultimately awarded Wife her portions of Husband's 401(k), valued at approximately $300,000, and her share of Husband's pension. In the end, she received an unequal distribution in the amount of $34,500. Wife was also awarded durational alimony in the amount of $5300 per month for ten years to begin on June 25, 2014, the date of the final judgment. Although the trial court indicated that it had considered the "appropriate tax treatment" of the alimony award, it did not expressly provide that the alimony would be taxable to Wife and deductible to Husband, and it did not award any alimony above Wife's basic needs to allow her to cover the income tax. Husband was awarded the house and the mortgage, with the $199,000 negative equity divided equally.

Additionally, Wife was awarded a partial distribution of marital assets to pay for her expert witness, on the condition that, upon final distribution of martial assets, Husband

4

would receive a $15,000 credit in addition to any associated costs. However, the trial court failed to credit Husband with said $15,000 in its distribution of assets. The trial court also failed to equally distribute $48,000 remaining on the couple's equity line of credit, having erroneously concluded the debt had been satisfied.

On appeal, the parties both agree that Husband is entitled to a $15,000 credit in the equitable distribution scheme for the partial distribution of marital assets he paid for Wife's expert witness prior to entry of the final judgment. They also agree that remand is necessary in order to equally distribute the $48,000 remaining on the equity line of credit. They disagree, however, on the trial court's decision to grant durational alimony and provide an unequal distribution of marital assets to wife. With regard to the award of alimony, both parties insist, albeit for different reasons, that the trial court improperly considered Wife's adulterous behavior.

"Durational alimony may be awarded when permanent periodic alimony is inappropriate." § 61.08(7), Fla. Stat. (2014) Its purpose is "to provide a party with economic assistance for a set period of time following a marriage of short or moderate duration or following a marriage of long duration if there is no ongoing need for support on a permanent basis." Id. The length of a durational alimony award may only be modified under exceptional circumstances and cannot exceed the length of the marriage. Id.

We find no error in the trial court's decision to award durational alimony. And, inasmuch as the award of durational alimony did not exceed the length of the marriage, we find no error in the trial court's decision to award it for ten years beginning on the date of entry of the final judgment.

5

Additionally, we find no error in the trial court's consideration of Wife's adulterous behavior and reject any argument to the contrary. Section 61.08(1), Florida Statutes (2014), permits a trial court to consider evidence of adultery in determining a proper award of alimony. However, consideration is dependent upon the circumstances of a particular case. See Williamson v. Williamson, 367 So. 2d 1016, 1019 (Fla. 1979). In this regard, the law is clear that "[a]bsent a showing of a related depletion of marital assets, a party's adulterous misconduct is not a valid reason to award a greater share of those marital assets to the innocent spouse" or to deny the adulterous spouse alimony. Childers v. Childers, 640 So. 2d 108, 109-10 (Fla. 4th DCA 1994) (citing Heilman v. Heilman, 610 So. 2d 60, 61 (Fla. 3d DCA 1992)); see also Noah v. Noah, 491 So. 2d 1124 (Fla. 1986). Need and ability to pay remain the primary considerations in awarding alimony. See Noah, 491 So. 2d at 1127; Motie v. Motie, 132 So. 3d 1210, 1213 (Fla. 5th DCA 2014).

The record reflects that the trial court weighed "the significant evidence regarding the Wife's adultery during the marriage, but [did] not consider the adultery a feature or an over-significant factor." Husband argues this was error, believing the trial court should have found wife's adultery instrumental in determining entitlement or, in his view, no entitlement to alimony. We reject this argument in the absence of any evidence that Wife depleted marital assets to further her adulterous behavior. See Noah, 491 So. 2d at 1127; Haley v. Haley, 649 So. 2d 332, 332-33 (Fla. 5th DCA 1995) ("The husband's adultery may be considered by the court in deciding on an alimony award, but where, as here, there is no evidence that the husband's adultery caused a material depletion of marital assets and no evidence it has increased the appellant's need for support (beyond the fact of the divorce itself), the court did not err in failing to award alimony based on the

husband's marital misconduct."); Santoro v. Santoro, 642 So. 2d 86, 87 (Fla. 2d DCA 1994) ("However, the rule in such cases is that unless such marital misconduct causes a depletion of marital assets, thus affecting one spouse's ability to pay alimony or the other spouse's need for alimony, it may not be used as a basis for an award of alimony."); Pardue v. Pardue, 518 So. 2d 954, 956 (Fla. 1st DCA 1988) ("[W]e conclude that it is improper to refuse to award alimony or reduce the amount of alimony . . . merely because of the existence of evidence of the requesting spouse's adultery." (citing Phillips v. Phillips, 504 So. 2d 412, 413 (Fla. 4th DCA 1987))). Likewise, we find no merit in Wife's assertion that the trial court improperly punished her conduct by reducing her alimony award.

Nevertheless, evidence that $5300 per month in durational alimony is sufficient to meet Wife's post-dissolution needs is not clear cut. In calculating the amount of durational alimony, the trial court failed to account for Wife's additional post-judgment expenses in the form of taxes[4] and insurance.[5] Notably, prior to entry of the final judgment, these expenses were paid by Husband. However, Wife must now incur them on her own. Also, although the trial court determined Wife has the ability to work – a finding we conclude is

---

[4] See Miller v. Miller, 625 So. 2d 1320, 1321 (Fla. 5th DCA 1993) (failing to consider tax consequences of income tax laws on the distribution of marital assets and alimony is ordinarily reversible error); Tarkow v. Tarkow,128 So. 3d 82, 84-85 (Fla. 2d DCA 2013) (explaining that the trial court is required to take into consideration the tax treatment and consequences of the alimony award where there is evidence of such (citing Farley v. Farley, 800 So. 2d 710, 712 (Fla. 2d DCA 2001))).

[5] Miller v. Miller, 466 So. 2d 356, 357 (Fla. 5th DCA 1985) (reiterating that a trial court may include a reasonable amount for medical insurance premiums as part of an alimony award (citing Inglett v. Inglett, 439 So. 2d 1389 (Fla. 1st DCA 1983); Cyphers v. Cyphers, 373 So. 2d 442 (Fla. 2d DCA 1979); Blass v. Blass, 316 So. 2d 308 (Fla. 3d DCA 1975))).

supported by competent, substantial evidence – it did not impute any income to her. Therefore, we are compelled to remand for reconsideration of the amount of durational alimony so the trial court may consider these factors.

We also remand for reconsideration of the equitable distribution scheme in light of the trial court's failure to credit Husband with the $15,000 partial distribution made to Wife during the dissolution proceedings, the failure to account for the $48,000 balance on the marital home's equity line of credit, and the failure to relieve Wife of the liability[6] associated with the marital home. In all other respects, we affirm.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

LAWSON, C.J. and EDWARDS, JJ., concur.

---

[6] Patel v. Patel, 162 So. 3d 165, 166 (Fla. 5th DCA 2015) (reversing and remanding where mortgaged marital home was awarded to the former husband, but the trial court made no provision for the former wife to be relieved of liability for that indebtedness).